UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH WROBEL and
KATHY WITTMAN,                                        Case No. 13-cv-13168

              Plaintiffs,

                                                      Paul D. Borman
                                                      United States District Judge

v.

HURON-CLINTON METROPOLITAN
AUTHORITY (HCMA), and its Board
of Directors, GEORGE PHIFER, Individually
and in his capacity as Chief of Police Dept. for HCMA,
and in his personal and official capacity as Secretary
to the Board of Commissioners of the HCMA,
Jointly and Severally,

              Defendants.

_____/

OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF NO. 14)

        Before the Court is Defendants Huron-Clinton Metropolitan Authority (HCMA) and its

Board of Directors, George Phifer, both individually and in his official capacity as Chief of Police

Dept. for HCMA and as Secretary to the Board of Commissioners of the HCMA's Motion for

Summary Judgment.[1]  (ECF No. 14.)  Plaintiffs filed a Response (ECF No. 17) and Defendants' filed

a Reply (ECF No. 18).  The Court held a hearing on April 9, 2014.  For the reasons that follow, the

_____

[1] Defendants' motion is captioned as one for Summary Judgment Pursuant and is "brought pursuant
to Fed. R. Civ. P. 12(c)."  (Defs.' Mot. 1.)  Fed. R. Civ. P. 12(c) of course governs motions for
judgment on the pleadings, with a pleading standard the same as 12(b)(6).  If matters outside the
pleadings are presented (and they are here) the motion is treated as one for summary judgment under
Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(d).  Both parties had a full opportunity to, and did, present
to the Court materials outside the pleadings and the motion is treated as one for summary judgment.

1

Court GRANTS the motion and DISMISSES Plaintiff's Complaint with prejudice.

**INTRODUCTION**

Plaintiffs have filed this federal action pursuant to 42 U.S.C. § 1983, alleging violations of their First Amendment rights to free speech and free association. Plaintiffs allege that they were retaliated against and threatened for their participation in a December, 2010 meeting of the Board of Commissioners of the Defendant Huron Clinton Metropolitan Authority ("HCMA").

Defendants argue that the facts supporting Plaintiffs' alleged First Amendment claim were known to them and should have been raised in a related state court litigation that resolved against the Plaintiffs and is currently on appeal to the Michigan Court of Appeals. Defendants argue that Plaintiffs' First Amendment claims are therefore barred by the doctrine of *res judicata*. Alternatively, Defendants argue that the Court should abstain from hearing this case under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

For the reasons that follow, the Court concludes that Plaintiffs' claims are barred by *res judicata,* GRANTS Defendants' motion for summary judgment and DISMISSES Plaintiffs' Complaint with prejudice. The Court declines to reach Defendants' alternative argument for summary judgment based upon abstention.

**I.     BACKGROUND**

**A.     The State Court Complaint**

Plaintiffs Kenneth Wrobel and Kathy Wittman, police officers employed by HCMA, filed an action in the State of Michigan Circuit Court for the County of Livingston on June 22, 2012, along with two other HCMA employees. (ECF No. 14, Defs.' Mot. Ex. 1, the "state court action".) The plaintiffs in the state court action filed their claims under Michigan's Elliott Larsen Civil Rights

Act, Mich. Comp. Laws § 37.2101, *et seq.* The case was styled as follows: *Michelle Chojnowski, Sharon Stone a/k/a Sharon Francis, Kathy Wittman and Kenneth Wrobel v. Huron Clinton Metropolitan Authority, a municipal corporation, George Phifer, individually and in his capacity as Chief of Police and HCMA Executive Secretary, Lt. John Orskey, individually and in his capacity as a lieutenant with the Defendant, Huron Clinton Metropolitan Authority Police Dept., jointly and severally.* (*Id.*) On March 13, 2013, the state court granted Wittman's motion to amend the complaint in the state court action to add a single claim of assault and battery against Phifer and the amended Complaint was filed on March 18, 2013. (Defs.' Mot. Ex. 2, First Amended Complaint; Ex. 3, Order Granting in Part Wittman's Motion to Amend Complaint.) The case caption remained unchanged. (*Id.*)

In the state court action, Wrobel, who was Wittman's immediate supervisor, pled claims under Elliot Larsen for retaliation (Count I) and failure to promote (Count II). (Amended Compl. ¶¶ 12-21, 52.) Relying upon alleged protected conduct that occurred as early as June, 2010, Wrobel claimed that defendant Phifer retaliated against him, and failed to promote him, because Wrobel had supported Wittman and had agreed to act as a witness to Phifer's alleged acts of sexual harassment, intimidation and discrimination against female HCMA employees. (*Id.* ¶¶ 14 -17.) Wrobel alleged among other things that Wittman had filed an EEOC charge against Phifer in April, 2011, in part based upon alleged retaliatory conduct for Wittman's attendance at an HCMA meeting to complain about Phifer's discriminatory conduct toward Wrobel. (*Id.* ¶ 14(b).) Wrobel alleged that Phifer's conduct had caused him great emotional distress, anxiety, depression and great economic loss.

In the state court action, Wittman pled claims under Elliot Larsen for sexual harassment (Count III) and retaliation (Count IV) and also pled claims for intentional infliction of emotional

3

distress (Count V) and assault and battery (Count VI). (Amended Compl. ¶¶ 22-55.) Wittman alleged that Phifer inappropriately "hugged" her, and retaliated against her for reporting Phifer's inappropriate sexual conduct and for filing an EEOC Complaint in April, 2011. (*Id*. ¶¶ 25-26, 33-34.) Wittman claimed that Phifer's conduct was extreme and outrageous and caused her to suffer severe emotional distress, requiring her to seek psychological counseling and claimed that the alleged "hugging" was done in a threatening manner, placing Wittman in fear of harm, and constituted an assault and battery. (*Id*. ¶¶ 39-43, 45-54.)

### B.    The Federal Court Complaint

Wrobel and Wittman are the sole Plaintiffs in the action filed in this Court on July 24, 2013. (ECF No. 1, Complaint, the "federal court action.") The caption of the federal court action is styled as follows: *Kenneth Wrobel and Kathy Wittman v. Huron Clinton Metropolitan Authority (HCMA) and its Board of Directors, George Phifer, individually and in his capacity as Chief of Police for HCMA Police Dept., and in his personal and official capacity as Secretary to the Board of Commissioners of the HCMA, jointly and severally.* (*Id*.)

In the federal court action, Wittman alleges that Defendant Phifer violated her First Amendment rights to free speech and free association by ordering her to sit down near him in his office on February 19, 2011 and reprimanding her for her attendance at a December, 2010 meeting of the Board of Commissioners of the HCMA. (Compl. Count I, ¶¶ 7-27.) Wittman alleges that in December, 2010, along with other HCMA officers, she attended a meeting of the Board of the HCMA while off duty and out of uniform, as a citizen of the State of Michigan, not as an employee of HCMA. (*Id*. ¶¶ 12-13.) Wittman alleges that on January 11, 2011, Defendant Phifer met with Wrobel and ordered Wrobel and fellow officer Doody to meet with their subordinates and instruct

4

them not to attend further meetings of the HCMA Board. (*Id.* ¶¶ 14-16.) Wittman alleges that on or about February 19, 2011, Phifer met personally with Wittman and, in a confrontation that lasted over 30 minutes, Phifer ordered her to sit one foot from him, chastised her, hugged her, told her that he loved her and ordered her not to attend future meetings of the HCMA Board. (*Id.* ¶ 17.) Plaintiff claims to have suffered severe emotional distress as a result of this meeting with Phifer that caused her to seek professional psychological counseling. (*Id.* ¶ 19.) She alleges that Phifer's actions violated her First Amendment rights of freedom of speech and freedom of association and alleges that HCMA has a policy or practice of tolerating Phifer's conduct. (*Id.* ¶¶ 23-24.)

In the federal court action, Wrobel alleges that Phifer violated his First Amendment rights of free speech and free association by forbidding Wrobel to attend meetings of the HCMA Board and for ordering Wrobel to forbid the officers under his command to attend HCMA Board meetings. (Complaint Count II, ¶¶ 28-37.) Wrobel alleges that at a January 11, 2011 meeting with Phifer, Phifer berated Wrobel and fellow officer Doody for allowing some of their officers to attend the December, 2010 HCMA Board meeting and ordered them to tell the officers under their command not to attend any future meetings of the HCMA Board of Commissioners. (*Id.* ¶¶ 31-32.) Wrobel further alleges that he complied with Phifer's orders and instructed his officers accordingly, all in violation of their First Amendment rights. (*Id.* ¶ 35.) Wrobel alleges that he has since suffered such extreme stress as a result of Phifer's conduct that he was forced to take a stress leave of absence as of March, 2012. (*Id.* at ¶ 34.) In Count III of the federal court action, both Wittman and Wrobel seek injunctive relief to prevent the further restraint on their First Amendment freedoms. (*Id.* ¶¶ 38-40.)

5

**C.      Proceedings and Depositions in the State Court Action**

Wittman and Wrobel's state court claims as asserted were premised largely upon the allegations regarding Phifer's alleged sexual harassment of Wittman and Wrobel's claims that Phifer retaliated against him for supporting Wittman's version of the facts implicating Phifer.  However, in the course of the state court proceedings and discovery, the facts regarding Wittman's attendance at the December, 2010 HCMA Board meeting, and Phifer's alleged retaliation against her for doing so, the very allegations that are at the heart of this federal court action, were known to Plaintiffs and were very much in evidence.  Indeed, the state court complaint specifically referred to Phifer's alleged retaliation for Wittman's attendance at the HCMA Board meeting.  (Defs.' Mot. Ex. 1, Original Compl. ¶ 14(b); Ex. 2, Amended Compl. 14(b).)

Wrobel was deposed in the state court action on November 26, 2012 and was questioned about the January 11, 2011 meeting with Phifer in which Phifer allegedly berated him for allowing his officers to attend the December, 2010 HCMA Board meeting.  Wrobel gave the following answers to the following questions:

> Q:      And so what was the purpose of the meeting?
> A:      I – I wasn't really sure because we went into the meeting, you know, very pleasant, you know, how you doing Sergeant Wrobel, he sat back . . . he looked at me and Sergeant Doody and he says you and Sergeant Doody are not doing your jobs in the Southern District.  He says, you know, how can you allow your officers from the Southern District to attend a Commissioner's meeting.  And then he closed the space between himself, his chair and went over and closed the space between us and he says if them officers were there to try to embarrass me or to make me look bad in front of the Board of Directors, let me make one thing perfectly clear. I have the full support of the Board. And he says I know who the officers who were there. You need to go back and you need to tell them officers – I says Chief, I can't tell officers what they do on their own personal time.  He says you need to go back and you tell them officers it would be in their best interest not to attend these Board meetings.  It not only makes the Department look bad, we're trying to make this department go forward and you're making it so

6

much harder by having, you know, all these officers come to these meetings. He says you need to go back and you need to talk to them officers, you and Doody need to.  He said you need to get control of your district. He said you need to be harder on your subordinates.

Q:      And this is the Board of the Huron Clinton Metropolitan Authority?
A:      Yes.
Q:      The monthly commissioner's meeting?
A:      Yes.

Defs.' Mot. Ex. 9, Wrobel Dep. 224-226.  Notably present at the deposition defending Wrobel was

Mr. Akhtar, the same counsel representing him in this federal court action.

Kathy Wittman was deposed in the state court action on March 27, 2013 and testified

regarding the December, 2010 HCMA Board meeting.  Wittman read from her own daily detail log

as follows:

Q:      And what's the date of this log.
A:      2/19/11.
                    *                    *                    *
A:      Chief Phifer flagged me into the station from the back door. . . . Three times remarked on December commissioner meeting. Disappointing me, doesn't look good for me. I expressed dissatisfaction, if that's what that is. Commissioner Lester put down his officers, said he couldn't disagree more. The board is not happy you with [sic] officers. Said he is in charge.
                    *                    *                    *
A:      He is mad, and he was asking me why I'm going to the commish meeting, you better not go to the commissioner meeting.

Defs.' Mot. Ex. 8, Wittman Dep. 99, 101, 117-18. Again, notably present at Wittman's deposition

was Mr. Akhtar, her counsel in this federal court action.

Dan Doody, who was present at the same January, 2011 meeting as Wrobel, was deposed

in the state court action on April 9, 2013 and testified as follows under examination by Mr. Akhtar

regarding the January, 2011 meeting with Phifer and Wrobel:

Q:      Okay.  Do you recall a meeting in January 2011 where chief made comments about people under your command attending a commission meeting in December of 2010?

A:     Yes.

                   *                *                *

Q:     Do you recall the chief telling you and Ken Wrobel that he was disappointed in people under your command attending a commission meeting in December?

A:     I don't remember the specific conversation, but it did come up, I remember there was people that did go to a commission meeting.

Q:     Did he tell you that you were to meet with those people that did go to a commission meeting and tell them that they should think twice about doing that again or words to that effect?

A:     Yeah.  That rings a bell, something to that effect.

                   *                *                *

Q:     After that meeting did you go down and meet with your staff and tell them what the chief told you to tell them?

A:     Well, that's the thing. It was kind of a conflict because it's a public meeting. You can't really . . .

Q:     My question is: The chief told you to tell people under your command to do something, is that correct?

A:     Yes.  It was ordered.

Q:     What was ordered?

A:     To tell them that they're not recommended to go to future meetings.

Q:     Okay. And did you sit down with the people in your command and tell them that?

A:     I passed on the information.

                   *                *                *

Q:     Did you feel uncomfortable having that meeting with officers?

A:     Yes.

Q:     Why were you uncomfortable?

A:     Because it was a public meeting and anyone can attend.

Defs.' Mot. Ex. 6, Dan Doody Dep. 28-31.  This time not only was Akhtar present, but he was doing the questioning about the very facts that underpin the claims asserted in this action, facts of which Mr. Akhtar had been aware since at least November, 2012.  To his credit, Mr. Akhtar, at the hearing on Defendants' motion in this Court, when asked by the Court whether it wasn't clear that all of the facts that relate to this federal lawsuit were brought out in the state court lawsuit and could have been raised there, responded affirmatively.

The Wittman and Wrobel depositions took place months before the state court judge issued

8

an order granting a motion to amend the state court complaint to add Wittman's assault and battery claim. Doody's deposition, at which Mr. Akhtar seemed well informed regarding the facts that underlie the claims asserted in this federal court action, occurred just days after the state court had granted Wittman's motion to amend the state court complaint. The discovery cut off date in the state court action was not until June 27, 2013, still months away. At no time was an effort made to amend the state court complaint to add the First Amendment claims that plaintiffs now argue are supported by these same facts.

## II.     STANDARD OF REVIEW

### A.     Fed. R. Civ. P. 12(c) - Motion for Judgment on the Pleadings

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp*., 399 F.3d 692, 697 (6th Cir. 2005)). "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same . . . ." *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). The Sixth Circuit has defined the pleading requirements necessary to withstand a challenge under Rule 12(c):

> We recently explained the pleading requirements that are necessary to survive a Rule 12(c) motion:
>
> > In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 1964-65 (internal citations omitted). In *Erickson v. Pardus*, 550 U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly*, however, the Supreme Court

9

> affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombly*, 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12. *Sensations, Inc.*, 526 F.3d at 295-96 (footnote omitted).

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (quoting *Sensations,* 526 F.3d at 295 (6th Cir. 2008)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court

10

clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion for judgment on the pleadings, as with a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims and (2) matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to

11

dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

### B.      Fed. R. Civ. P. 56 - Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material

fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than

a scintilla of evidence to survive summary judgment).  "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."  *Celotex*, 477 U.S. at 323-24.

## III.   ANALYSIS

### A.   Plaintiffs' Claims are Barred by *Res Judicata*

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state."  *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738).  Michigan employs a "broad view of *res judicata*."  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2010) (quoting *In re MCI Telecommunications Complaint*, 460 Mich. 396, 431 (1999)).  In Michigan, *res judicata* bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.  *Abbott*,

14

474 F.3d at 331(citing *Adair v. State*, 470 Mich. 105, 121 (2004)).  *Res judicata* generally bars not only claims already litigated, but claims arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.  *Dart v. Dart*, 460 Mich. 573, 586 (1999). "'Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time*, *space*, *origin or motivation*, [and] whether they form a convenient trial unit.'"  *Buck*, 597 F.3d at 817 (quoting *Adair*, 470 Mich. at 125) (noting emphasis and alteration in original).

Plaintiffs concede that the state court action was decided on the merits.  "Plaintiffs do not argue with the Defendants statement that the court granted summary disposition to the Defendants and that under Michigan law, the grant of summary disposition constitutes a decision on the merits." (Pls.' Resp. 11.)  Thus the only issues the Court must address are (1) whether both actions involve the same parties and (2) whether the First Amendment claims could have been resolved in the state court action.

### 1.    Both actions involve the same parties or their privies.

Plaintiffs in this federal court action, Wittman and Wrobel, were plaintiffs in the state court action.  Defendants in this action, HCMA and Phifer, were defendants in the state court action.  Additionally, both Plaintiffs and Defendants were represented by the same counsel in the state court action as represent them in this case.

Plaintiffs argue that they did not sue Phifer in his official capacity in state court and therefore the parties are not identical.  However, it is clear from the state court caption that Phifer was indeed sued in both his official and individual capacities in the state court action, in both the original and amended complaints.  The fact that the allegations in the state court action under the Elliott Larsen

15

Act did not raise an official capacity claim does not alter the fact that Phifer was named in the suit in his official capacity.  Clearly if Wittman and Wrobel had wanted to assert a claim against Phifer in his official capacity in state court, there would have been no capacity amendments to the pleadings necessary as he was already named in his official capacity.  The Court concludes that this element of the claim preclusion inquiry is satisfied because the parties in this federal court action were before the court in the state court action.

**2.      The First Amendment claims could have been resolved in the state court action.**

"'Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time*, *space*, *origin or motivation*, [and] whether they form a convenient trial unit.'"  *Buck*, 597 F.3d at 817 (quoting *Adair*, 470 Mich. at 125) (noting emphasis and alteration in original).  The allegations in the federal court Complaint parallel exactly the deposition testimony of Wrobel, Doody and Wittman in the state court action.  Indeed, the salient facts underpinning both complaints derive from the same two meetings, one on January 11, 2011 and one on February 19, 2011.  The federal court Complaint alleges that Wittman attended a December, 2010 meeting of the HCMA Board as a citizen, not an employee of the HCMA and that Phifer called Wrobel and Doody to a meeting on January 11, 2011, to order them to tell the officers under their command (including Wittman) not to attend future meetings of the HCMA.  (Compl. ¶¶ 13-15.)  The federal court Complaint goes on to describe the February 19, 2011 meeting between Wittman and Phifer, in which Phifer allegedly chastised Wittman for attending the December, 2010 meeting and then hugged her and told her that he loved her.  (*Id*. ¶ 17.)  These allegations in the federal court Complaint are followed by the same claims of severe emotional distress necessitating a stress leave of absence as were alleged in the state court

16

complaint.  (*Id.* ¶ 22.)  Tacked on to the federal court Complaint is the additional conclusory allegation that these actions constitute a violation of Wittman's First Amendment rights and that the HCMA had a policy of tolerating Phifer's unconstitutional conduct.  (*Id.* ¶¶ 23-24.)

Thus, these factual allegations are not only "related in time, space, origin [and] motivation," but they are identical to some of the factual allegations that were relied upon in support of the state court complaint.  The state court complaint referred to the alleged retaliation against Wittman for having filed an EEOC complaint that claimed  "retaliation [by Phifer] because Wittman attended an authority meeting to complain about Phifer's conduct . . . ." (Defs.' Mot. Ex. 1, Original state court Compl. ¶ 14(b).)  The alleged retaliatory conduct for attending the HCMA meeting was then fully explored in the state court action through discovery depositions of Wittman, Wrobel and Doody, as set forth in detail above.  In fact Mr. Akhtar, counsel for Plaintiffs in both the state court and federal court actions, questioned Sgt. Doody at length about Phifer's alleged order to Doody and Wrobel to forbid their officers to attend future meetings and extracted from Doody the concession that he was uncomfortable doing what Phifer had ordered because it was "a public meeting" and anyone could attend. Defs.' Mot. Ex. 6, Dan Doody Dep. 28-31.  The First Amendment claim was actually expressly drawn out by counsel in the state court action and should have been raised in the state court action as it formed an obviously "convenient trial unit."

The state court complaint was filed on June 22, 2012, long after the December, 2010 HCMA meeting and Phifer's alleged order in January, 2011 that officers not attend future meetings of the HCMA Board and Phifer's alleged intimidation and harassment of Wittman at the meeting on February 19, 2011.  Thus, Plaintiffs cannot claim that they were unaware of the facts that form the basis for the First Amendment claims when they filed the state court action.  Certainly once

discovery had begun in the state court action, as early as Wrobel's November, 2012 deposition, the details of Phifer's allegedly chilling conduct was widely known and understood by Plaintiffs as retaliatory in nature.

Plaintiffs state that during the course of the state court action they were trying to understand through discovery who was responsible for authoring a letter to the HCMA Board in advance of the December, 2010 meeting. (Pls.' Resp. 2.)  There is no explanation given as to why this precluded Plaintiffs from asserting their First Amendment claims in the state court action.  Plaintiffs may have been further exploring such a claim through discovery but that does not answer the question why they did not plead the claim - this is the very purpose of discovery and the very reason for the mere plausibility standard that is applied at the pleading stage.

Plaintiffs also suggest that they were precluded from making a First Amendment claim because the state court judge, on June 27, 2013, severed the four plaintiff's claims for purposes of responding to summary disposition motions and prevented each of the plaintiffs from relying on facts of a co-plaintiff's case. (Pls.' Resp. 3-4, 6.)  Plaintiffs state that it was then that Wittman and Wrobel decided to file this federal court action alleging retaliation in violation of their First Amendment rights. (*Id*.)  The state court judge ordered severance for briefing on June 27, 2013, long after Plaintiffs had knowledge of the facts that they now say suggest a First Amendment claim. The judge's decision to sever the cases for dispositive motion briefing does not explain why Plaintiffs did not initially plead the First Amendment claim or at least move the state court to amend to add the claim at some point before the dispositive motion stage.  Presumptively such an amendment would have been entertained by the state court given that the state court judge granted Wittman leave to amend in March, 2013, to add an assault and battery claim.  There is no evidence

18

that the state court judge would not have entertained a motion to amend to add a claim based upon facts that had already been elicited in discovery. Plaintiffs' suggestion that they were somehow precluded from asserting their First Amendment claim in the state court action is unsupported by the record.

Plaintiffs also suggest that the state court action scheduling order, which required any amendments to add parties to be filed by December, 2012, precluded them from adding Phifer as a defendant in his official capacity and thus necessitated the filing of this separate federal court § 1983 action. (Pls.' Resp. 3-4.) The Court has already found that Phifer was clearly named in both his individual and official capacities in the state court action. There would have been no need to seek leave of court to add Phifer in his official capacity as he was named his official capacity from the inception of the state court action.

Finally, Plaintiffs would like the Court to "give determinative weight" to the fact that Wittman was granted permission to amend the state court complaint on March 18, 2013, but that Phifer had not been deposed at that time. (Pls.' Resp. 5.) Plaintiffs suggest that without Phifer's deposition, they lacked "full knowledge" of the facts necessary to support their First Amendment claim. (*Id*.) They state that it was not until after Phifer's deposition that they "figured out" that Phifer was retaliating against them partially because of their involvement in the December, 2010 meeting. (Pls.' Resp. 4.) This is directly contradicted by paragraph 14(b) of the original state court complaint which states that Wittman's April 11, 2011 EEOC complaint was based in part on Phifer's "retaliation because Wittman attended an authority meeting." Plaintiffs' claim that they finally "figured out" that Phifer was partially retaliating for the meeting conduct only after his deposition is entirely disingenuous. That they may have confirmed their suspicions at Phifer's deposition is

19

no excuse for not filing the claim sooner.  As set forth in great detail above, the facts surrounding Phifer's allegedly chilling conduct in ordering officers not to attend future HCMA Board meetings was known to Plaintiffs long before the state court complaint was filed, and certainly was fleshed out enough to plead the claim by way of amendment after Wrobel's deposition in November, 2012. Plaintiffs were not required to have deposed Phifer and perfected the claim in order to plead it - this is the function of discovery.  The Court concludes that the timing of Phifer's deposition is irrelevant to the *res judicata* inquiry when Plaintiffs were well aware of the facts they now offer in support of their First Amendment claim long before Phifer's deposition.

In sum, Plaintiffs offer no reasonable excuse for failing to raise the First Amendment claim in the state court action.  Incredibly, Plaintiffs state that "[i]f the Defendants thought that Plaintiffs had a cause of action under the 1st Amendment, then Defendants should have raised that issue with the trial court." (Pls.' Resp. 11.)  The Court doesn't even know how to respond to this preposterous suggestion that the Defendants were responsible for alerting Plaintiffs or the state court judge to potential claims that the Plaintiffs might have against them.

The state court action resulted in a decision on the merits, the parties in the federal court action were parties in the state court action and the issues sought to be litigated in this Court could have been raised and litigated in the state court action.  There is no question that the claims asserted in this federal court action arose out of the same transaction, i.e. they were related in time, space, origin or motivation (in fact they all arose principally out of the same two meetings) to the claims asserted in the state court action.  Indeed, the same facts were specifically referenced in the state court action, and pursued through discovery, as part of the basis for their sexual harassment and retaliation claims asserted in that action.  Both complaints specifically refer to the February 19, 2011

20

meeting at which Wittman was allegedly reprimanded for attending the December, 2010 HCMA Board meeting. This is the same meeting during which she was allegedly "hugged" inappropriately, the conduct that formed in part the basis for her sexual harassment claims in the state court action against Phifer. (*Compare* State Court Compl. ¶¶ 26-27 *with* Federal Court Compl. ¶ 17.) *Res judicata* clearly bars Plaintiffs from asserting their First Amendment claims in this Court.

### B.   *Colorado River* Abstention

The Court declines to reach Defendants' alternative argument that the Court should abstain from hearing Plaintiffs' claims under principles of abstention.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DISMISSES Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

 s/Paul D. Borman                      
Paul D. Borman
United States District Judge

Dated: April 15, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 15, 2014

s/Deborah Tofil                         
Case Manager